In the Matter of the Arbitration between BAAR & BEARDS, INC., Appellant, and OLEG CASSINI, INC., Respondent.

First Department, June 24, 1971.

*Robert S. Groban* for appellant.

*Donald S. Engel* of counsel (*Booth, Lipton & Lipton,* attorneys), for respondent.

McGIVERN, J.   In this article 75 proceeding, the submission reveals that the petitioner, Baar & Beards, Inc., had an exclusive licensing arrangement with Oleg Cassini, Inc., wherein the latter permitted it to use the Cassini trade-mark in connection with the manufacture and distribution of scarves.   The agreement provided for arbitration.   The petitioner, Baar & Beards, Inc., claiming a violation by Cassini, demanded arbitration, but since the parties could only agree upon one arbitrator, the American Arbitration Association selected the other two. Baar & Beards, Inc., through its attorney, commendably wrote to the AAA, stating that six years ago the president of Baar & Beards, Inc., Stanley Finkel, had had an attorney-client relationship with one of the arbitrators, Jules Hessen, Esq., an attorney, and a director of the AAA.   The attorneys for respondent, Oleg Cassini, Inc., then wrote to the tribunal administrator of the AAA: "in view of the information disclosed therein, we feel that Mr. Hessen is obligated to decline his appointment as arbitrator".   Despite the formal objection of Cassini, the AAA determined that Hessen would remain as an arbitrator, although the AAA, through its tribunal administrator, significantly also said: "the Association feels that it would be improper to forward said letters to the Arbitrators".

At the hearing, Mr. Hessen, now chairman of the panel, mentioned that knowledge of the objection had been brought to his attention, that it was true he had represented the petitioner in the past, but, nevertheless, he would be fair and impartial. Thereupon, the parties signed a statement to the effect that

the panel was acceptable. The arbitration resulted in a triumph for Baar & Beards, Inc.; Cassini moved to modify and clarify the award, and failing there, finally cross-moved to vacate the award on the grounds of bias, prejudice and misconduct.

Special Term has vacated the award as offensive to "elemental fairness", and in the interests of justice. Although this appeal presents a very, very close question, we cannot fault Special Term for high-mindedness, and we agree.

There are many tangential issues: the questionable applicability of some sections of the arbitration rules, the remoteness of the arbitrator's connection with one of the parties, whether his alleged bias touched the subject matter, and whether Cassini did not pass the point of no return by participating in the hearings. We place none of these factors in the van of our consideration. The one central issue on which this case turns, is whether or not a reasonable man would say that the challenged arbitrator, by reason of his former attorney-client relationship with one of the parties, would give the appearance of bias or be reasonably regarded as biased. (*Commonwealth Corp.* v. *Casualty Co.*, 393 U. S. 145.) In the latter case (p. 150) the court noted: "This rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased *but also must avoid even the appearance of bias.*" (Emphasis supplied.)

Or, as our progenitors of the common law have often told us, it is just as important, not only that justice be done, but that it be manifestly done. See: *Hannam* v. *Bradford Corp.*, Court of Appeal, England, March 9, 1970, The Weekly Law Reports (vol. 1, 1970, 937, 941-942): "The county court judge applied the test as to whether 'a reasonable man would say that a real danger of bias existed.' Mr. Duncan asserted that that test was erroneous and that, anyway, no real danger existed. This court was referred to the well-known series of authorities, not all of which had been cited to the county court judge, ranging from *Reg.* v. *Rand* (1866) L.R. 1 Q.B. 230, through the case of *Reg.* v. *Camborne Justices, Ex parte Pearce* [1954] 1 Q.B. 41 to *Metropolitan Properties Co. (F. G. C.) Ltd.* v. *Lannon* [1969] 1 Q.B. 577, a recent decision of this court. It seems, however, only necessary to quote the following passages in the last-mentioned case, in which the authorities were reviewed. Lord Denning M.R., after emphasising the importance, in relation to the points in issue, of Lord Hewart C.J.'s celebrated dictum in *Rex* v. *Sussex Justices, Ex parte McCarthy* [1924] 1 K.B. 256,

259, said, at p. 599: 'The court looks at the impression which would be given to other people. Even if he '—the chairman of the tribunal in that case—' was as impartial as could be, nevertheless if right-minded persons would think that, in the circumstances, there was a real likelihood of bias on his part, then he should not sit. And if he does sit, his decision cannot stand.'

"Then a little later, he said: 'The court will not inquire whether he did, in fact, favour one side unfairly. Suffice it that reasonable people might think he did. The reason is plain enough. Justice must be rooted in confidence: and confidence is destroyed when right-minded people go away thinking: "The judge was biased." '

"Danckwerts L.J. propounded the question as follows, at p. 601: 'Must there be a real likelihood that the tribunal was biased, or is it sufficient that a reasonable person would think that the tribunal might be biased? And, how should the principle expressed by Lord Hewart that "justice should not only be done, but should manifestly and undoubtedly be seen to be done " be applied in a matter of this kind?'

"Then, at p. 602, he decided the case on the basis: 'A person subsequently hearing of these matters might reasonably feel doubts, I think, of the chairman's impartiality. . . .' Edmund Davies L.J. said, at p. 606: 'But I cannot bring myself to hold that a decision may properly be allowed to stand even although there is reasonable suspicion of bias on the part of one or more members of the adjudicating body.' "

Thus, despite the " sour grapes " aspect of Cassini's position, what happened in the instant arbitration is not a good precedent; nor is it conducive to fostering confidence in the arbitration system; and in view of the undissipated charge of bias, true or not, there is something impalpable trailing behind the result herein that faintly wafts the olfactory senses. Nor is the AAA completely free from fault. Although rule 39 proscribed any communication whatsoever between an arbitrator and one of the parties, a rule specifically regarded as applicable to the present circumstances by the AAA, in its letter of July 7, 1970, this rule was clearly violated by the public avowal by the arbitrator of his personal knowledge of the Cassini objection to his sitting. Unexplained, the arbitrator was clearly the recipient of some ex parte intelligence. We note, also, that this letter of July 7, 1970, wherein the AAA proclaimed its fiat that Hessen would remain as arbitrator, was signed by a " Joseph Prizzi, Tribunal Administrator ". We observe that it might take a great deal of hardihood for any administrator to disqualify a member of the board of directors, such as Hessen.

True, at the hearing, the Cassini representatives proceeded, but then they were behind the gun, and we cannot reject out of hand their conclusion that further protest would have been futile because Hessen, as panel chairman, at that point would not have disqualified himself anyway, since he already had the imprimatur of the AAA, of which he was a director. And, although perhaps, what took place at the hearing is beyond our technical competence, the conduct of the arbitrator casts some light on the elusive issue of actual bias, particularly the claim of Cassini that the arbitrator prejudged the agreement between the parties and peremptorily abridged the Cassini attorneys' right of summation.

In any event, we feel that if AAA had to do it all over again, Hessen would not have been continued as arbitrator in the presence of Cassini's written objection. Without any reflection on the integrity of the arbitrator, and we doubt it not, the inflexible determination to retain him regardless of a formal protest, known to the arbitrator, cannot be said to reflect "the punctilio of an honor the most sensitive." And if such an exalted standard of conduct is expected of mere businessmen, why should it not be exacted of AAA arbitrators, dwelling, as they do, on the Mount Olympus of ethics?

Thus, we cannot declare the conclusion of Special Term to be incorrect. And we affirm, without costs and without disbursements.

McNALLY, J. (dissenting). The order vacating the arbitration award should be reversed and the award confirmed for the following reasons:

1. The arbitrator was properly selected.

2. The respondent waived in writing any objections to the alleged improper appointment before the hearings commenced.

3. There is no evidence whatsoever of misconduct on the part of the arbitrator.

4. The arbitrator was not a neutral arbitrator within the meaning of section 18 of the Commercial Arbitration Rules of the American Arbitration Association.

5. Before hearings commenced, the arbitrator reiterated prior dealings with the appellant's president six and one-half years before.

6. The minutes of the arbitration are not part of the record.

The provision for arbitration is contained in the agreement between the parties dated January 1, 1969, granting the appellant, for the term of one year, and the option to renew for an additional year, the sole and exclusive license throughout the

United States to use respondent's trade-mark in the production and sale of appellant's women's scarves and related items. Paragraph 22 of the agreement provides for arbitration of any dispute or controversy arising out of the agreement " pursuant to the rules then obtaining of the American Arbitration Association ". Thereby the parties became bound by the rules of the Association. (*Korein* v. *Rabin,* 29 A D 2d 351, 355.)

Appellant charged respondent with violation of the agreement of January 1, 1969 in selling to Liggett & Myers, Inc. during 1969 approximately 75,000 scarves bearing respondent's trade-mark. The Association selected one arbitrator from names submitted to the parties and not objected to, and, in addition, appointed two other arbitrators, one of them an attorney, to complete the panel of three. The attorney accepted his appointment on June 18, 1970. On June 22, 1970, appellant's attorney commendably informed respondent's attorneys that the lawyer-arbitrator had six and one-half years prior thereto represented the appellant's president on the sale of his interest in a children's wear company, and that said attorney had prior thereto represented the firm with whom appellant's president was associated. There is no evidence of any other connection between appellant's president and said lawyer-arbitrator since the sale on which he represented appellant's president six and one-half years ago.

On July 7, 1970, the Association, after review thereof, overruled respondent's objection to the lawyer-arbitrator.

The sole ground assigned by Special Term for the vacatur is noncompliance with section 18 of the Commercial Arbitration Rules of the American Arbitration Association (" Association ") providing a neutral arbitrator shall disclose any circumstances likely to create a presumption of bias or " which he believes might disqualify him as an impartial Arbitrator ".

The challenged arbitrator was not a " neutral arbitrator " within the meaning of section 18 of the rules of the Association. The term " neutral " is relative, having application to a situation where the parties appoint two of the arbitrators, who, in turn, select a " neutral " one, or one such is appointed by the Association upon the inability of the two-party-appointed arbitrators to agree on a " neutral ". Section 14 of said rules clearly delineates the typical tripartite arbitration panel incorporating a neutral arbitrator. This concept of a neutral arbitrator was fully elaborated in *Matter of Astoria Med. Group (Health Ins. Plan)* (11 N Y 2d 128) and is incorporated in CPLR 7511 (subd. [b], par. 1, cl. [ii]) providing for vacatur

or modification of an award on a showing of prejudice by " partiality of an arbitrator appointed as a neutral ".

Section 18 of the rules of the Association requires the prospective neutral arbitrator to disclose circumstances likely to create a presumption of bias.   Here the arbitrator involved was not " neutral ", hence he did not have the affirmative duty to disclose, and his failure to do so, in and of itself, is not ground for vacatur of the award.   In addition, it does not appear that the said arbitrator, who represented appellant's president six and one-half years prior to his appointment, knew that the appellant's president was indirectly involved in the matter to be arbitrated.   Moreover, and more importantly, the respondent was informed of the alleged circumstances relative to the arbitrator's prior legal representation of appellant's president four days after the arbitrator's acceptance of his appointment. There is, therefore, no substantive basis for vacatur simply on the basis of the alleged failure to disclose on the part of the said arbitrator.

The remote act of representation by the said arbitrator of the appellant's president in a matter unconnected with the subject matter of the arbitration is no ground for vacatur or modification of the award.   (*Matter of Astoria Med. Group* [*Health Ins. Plan*], 11 N Y 2d 128, *supra*; *Matter of Milliken Woolens* [*Weber Knit*], 11 A D 2d 166.)

Special Term properly held that respondent did not establish bias, prejudice or misconduct on the part of said arbitrator. Respondent's petition to vacate strenuously, but mistakenly, argues the arbitrator was not impartial and fair because he stated his opinion to be that the agreement of January 1, 1969 was controlling, thereby impliedly rejecting respondent's contention that a prior oral agreement authorized its sale to Liggett & Myers, Inc.   The minutes of the arbitration are not part of the record. Assuming, however, the alleged statement of the arbitrator, it does not sustain the claim that he was not impartial and fair.   He was simply reacting to the compelling evidence of the written agreement of January 1, 1969, complete on its face, containing no suggestion of the reservation of a right by the respondent to cut down the exclusive right of the use of its trade-mark to the extent of the admitted sale by it to Liggett & Myers, Inc.   The respondent's reliance upon a prior oral agreement is unsubstantiated by any writing or correspondence between the parties.

There is no evidence of impartiality.   Evidence is properly calculated to persuade, and the fact that an arbitrator manifests

his reaction to the evidence does not demonstrate lack of impartiality. Moreover, the respondent was allowed to adduce the evidence as to the alleged prior oral agreement.

In addition, on this record, it is clear that the respondent knowingly waived its objection to the said arbitrator. Before the hearing commenced, the said arbitrator affirmed his prior dealings with appellant's president, and the attorneys for the parties signed a statement to that effect, and certified '' The panel is acceptable to the Parties ''.

CAPOZZOLI, J. P., KUPFERMAN and TILZER, JJ., concur with McGIVERN, J.; McNALLY, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on April 15, 1971, affirmed, without costs and without disbursements.