■ Brian De Camp, an Infant, by His Father and Natural Guardian, James De Camp, et al., Respondents, v Good Samaritan Hospital, Appellant, et al., Defendants.—In a medical malpractice action, defendant Good Samaritan Hospital (the hospital) appeals (by permission) from an order of the Supreme Court, Suffolk County, dated December 8, 1977, which denied its motion, *inter alia,* to vacate the findings of the medical malpractice panel, dated March 28, 1977. Order reversed, on the law, without costs or disbursements, motion granted and matter remanded for a *de novo* hearing on the issue of malpractice before a new panel. On or about March 2, 1972 the infant plaintiff was taken to the emergency room of the defendant hospital complaining of swelling and pain of the right foot as a result of his having been struck there with a hockey puck while playing street hockey. After he was examined by defendant Doctor Monges, X rays were taken, read by Doctor Monges and then sent to defendant Doctor Pizzolato, a

radiologist, for another reading. Contrary to Monges' negative diagnosis, Pizzolato reported a positive fracture reading. However, a negative fracture reading was placed in the boy's records. Plaintiffs brought two medical malpractice actions, one against the hospital and Pizzolato and the other against Monges. The actions were consolidated. Pursuant to section 148-a of the Judiciary Law and Part 684 of the rules of this court (22 NYCRR Part 684), a medical malpractice panel was convened. It consisted of Mr. Justice Thom, an attorney and two doctors, one of whom was Bruce Saxe. At the completion of the hearing, the panel, by unanimous vote, absolved defendant Monges of liability and held that the hospital had departed from accepted medical standards. It rendered no decision for or against Doctor Pizzolato. Either at or shortly after the determination was rendered, counsel for Doctor Pizzolato revealed that he or his firm was also representing Doctor Saxe, one of the panel members, in an unrelated malpractice action. When Mr. Justice Thom learned of this development, he convened a postpanel hearing at the oral request of the hospital's attorney to vacate the panel's findings on the ground that it was not totally objective because of the evident bias of Doctor Saxe. Following argument of the hospital's oral objections, Mr. Justice Thom denied the hospital's request that a new panel be convened "without there being any representatives [thereon] associated with any of the law firms involved in this case." A formal written motion was thereafter made seeking the same relief. Mr. Justice Thom denied the motion on the ground that: "The time to file written objection to the designation of the doctor member of the panel is prior to the date of the hearing (Judiciary Law, Section 148-a, subd. 2[d]). Attorneys would be well advised to make inquiry prior to a scheduled hearing, to ascertain if any valid reason exists for disqualifying the doctor member of the panel." In our opinion the court erred in holding that the hospital had a burden of ferreting out the existence of bias or conflict of interest prior to the commencement of the proceeding. Ordinarily a party appearing before a Judge, a hearing officer, an administrative board or an advisory panel is not responsible for conducting what in effect would be a *voir dire* into the integrity and fairness of such person or persons. In the absence of any indication to the contrary, a litigant is entitled to assume that a duly constituted judicial or administrative forum of justice passing upon his cause is wholly free, disinterested, impartial and independent. In the matter at bar it was only after the panel's hearing had been concluded that counsel for the hospital discovered the relationship between counsel for Doctor Pizzolato and the panelist Doctor Saxe. It is therefore evident that no written challenge to Doctor Saxe's presence on the panel could have been made by the hospital pursuant to section 148-a (subd 2, par [d]) of the Judiciary Law and 22 NYCRR 684.4 (c). Where a party entitled to object is not informed of the disqualifying facts until after the expiration of the time in which objection should be made, his objection, made upon discovery of the facts, will be regarded as reasonably made (cf. 48 CJS, Judges, § 94). In the instant situation the undisclosed relationship between Doctor Saxe and Doctor Pizzolato's attorney was not a casual or informal one; rather, it was the confidential relationship of client and attorney. Thus, it was incumbent upon the physician panelist to disclose such relationship. The nature of his quasi-judicial function is similar to that exercised by a Judge (cf. *Matter of Stevens & Co. [Rytex Corp.]*, 34 NY2d 123, 129; *Commonwealth Corp. v Casualty Co.*, 393 US 145). We also disagree with the position taken by plaintiffs that the hospital had to show that such relationship operated to its detriment. The test is not whether actual bias existed, but whether the

circumstances would give the appearance of bias or be reasonably regarded as bias *(Commonwealth Corp. v Casualty Co., supra; Matter of Baar & Beards [Oleg Cassini, Inc.],* 37 AD2d 106, revd on other grounds 30 NY2d 649). Basic to every judicial and quasi-judicial proceeding is that the integrity of the decision-making body must be above reproach and even the appearance of impropriety should be avoided (Code of Judicial Conduct, canon 2; cf. *Matter of Labor Relations Section of Northern N. Y. Bldrs. Exch. v Gordon,* 41 AD2d 25; *Matter of Cross Props. [Gimbel Bros.],* 15 AD2d 913, affd 12 NY2d 806; *Casterella v Casterella,* 65 AD2d 614). It is imperative that a person acting in a judicial or quasi-judicial capacity divulge any previous or present associations with parties or their agents which might cast doubt on his impartiality. Such disclosure is essential in order to afford other parties to the proceeding an opportunity to make an independent decision as to whether to accept such individual notwithstanding his past or present associations (cf. *Matter of Colony Liq. Distrs. [Local 669, Int. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Amer.],* 34 AD2d 1060). Accordingly, in order to preserve both the appearance as well as the fact of impartiality, the finding of the panel in this instance must be vacated and the issue of malpractice considered *de novo* by another panel composed of new members. Martuscello, J. P., Latham, Damiani and Titone, JJ., concur.