Elizabeth M. Scott et al., Appellants, v Brooklyn Hospi-
tal et al., Respondents.

Second Department, May 16, 1983

APPEARANCES OF COUNSEL

*Weingrad & Weingrad, P. C. (Stephen A. Weingrad* of counsel), for appellants.

*Furey, Furey, Gerver & McHenry, P. C. (Frank Catelli* of counsel), for Brooklyn Hospital and another, respondents.

*Gordon & Silber, P. C. (David M. Dince* and *David Henry Sculnick* of counsel; *Julianna Ryan* on the brief), for Richard Calame, respondent.

OPINION OF THE COURT

Lazer, J.

This appeal presents another variation of the ethical dilemmas currently afflicting the operations of medical malpractice panels. While it is clearly forbidden for a physician to serve on a panel where his lawyer represents one of the parties, here the physician panelist served on an associate panel and not the one at which the lawyer appeared. It is nonetheless posited to us that the connection between the panel at which the lawyer appeared and the one where his client served was so close, and the liability issues so interrelated, as to create an appearance of bias requiring vacatur of the findings of both panels. As may be surmised, the facts have their complexities.

Suffering from cancer of the uterus, Elizabeth Scott was examined by Dr. Richard Calame, an obstetrician/gynecologist, who recommended that radium inserts be implanted in her uterus and vagina, to be followed by the surgical removal of the uterus. Dr. Calame consulted with his colleague, Dr. Mario Gonzalez, a radiation therapist, who suggested Cobalt-60 radiation therapy after the surgery. Treatments were then rendered in accordance with those recommendations. Mrs. Scott and her husband subsequently commenced this action against Dr. Calame, Dr. Gonzalez and Brooklyn Hospital, alleging that the treatments were improper, the radiation excessive, the hospital equipment defective, and that the physicians failed to warn her about the potential dangers of the treatment.

The current dispute arose after the clerk of the medical malpractice unit notified all parties that a hearing in the case would be convened on June 10, 1982. The panel members named were Justice FRANK COMPOSTO, Samuel Sussman, Esq., Dr. S. G. Kohl, an obstetrician/gynecologist, and Dr. Noel Nathanson, a radiation therapist. Although the clerk's notice left it unmentioned, the claims against the doctors were to be heard by two panels. The lawyer and judicial members of both panels were to be the same, but the physician members were to differ in accordance with the medical specialty in issue (see 22 NYCRR 684.4). Dr. Nathanson, the radiation therapist, was thus assigned to the panel involving the claims against the radiation therapist, Dr. Gonzalez, and the hospital, while Dr. Kohl, the gynecologist, was assigned to the panel dealing with claims against the gynecologist, Dr. Calame.

On May 26, 1982, Gordon & Silber, P. C., attorneys for Dr. Calame, wrote the court and the other parties informing them that they represented Dr. Nathanson in a separate action. On the day before the panels were scheduled to meet, plaintiffs' attorney called Justice COMPOSTO's chambers to voice his objection to Dr. Nathanson's participation in the case, even though Dr. Nathanson was not scheduled to sit on the panel dealing with Dr. Calame's case. The following day — before the time scheduled for the hearings — plaintiffs submitted a written objection alleging that Gordon & Silber's representation of Dr. Nathanson might

critically impair the latter's ability to render a dispassionate decision and seeking appointment of a different radiation therapist.

At the outset of our analysis, we note that the failure to make a written objection to the designation of Dr. Nathanson as a panel member within five days after notification of the panel's composition is not fatal to plaintiffs' appeal since Gordon & Silber did not reveal its representation of Nathanson in a timely fashion (see *Schmitt v Kantor,* 83 AD2d 862; *Murphy v Telesha,* 67 AD2d 701).

As to the merits, "[t]he first idea in the administration of justice is that a judge must necessarily be free from all bias and partiality. He can not be both judge and party, arbiter and advocate in the same cause. Mankind are so agreed in this principle, that any departure from it shocks their common sense and sentiment of justice" (*Oakley v Aspinwall,* 3 NY 547, 549-550). Although *Oakley* spoke of the actuality of a Judge's freedom from bias, the appearance, no less than the fact, of impartiality and fairness, is an indispensable attribute of the judicial system which must be preserved in order to protect the integrity and dignity of the judiciary in the eyes of the community (*Leonard v Mulry,* 93 NY 392; see, also, *Murray v Murray,* 73 AD2d 1015; *Casterella v Casterella,* 65 AD2d 614).

Since the appearance of bias standard applies to quasi-judicial as well as judicial proceedings, proceedings before medical malpractice panels are within its scope (see *Commonwealth Corp. v Casualty Co.,* 393 US 145, 148-150; *Matter of Stevens & Co. [Rytex Corp.],* 34 NY2d 123, 129; *Murphy v Telesha,* 67 AD2d 701, *supra; De Camp v Good Samaritan Hosp.,* 66 AD2d 766). We have already held that the existence of an attorney-client relationship between a medical malpractice panelist and the attorney for the malpractice defendant requires disqualification of the panel member (*Schmitt v Kantor,* 83 AD2d 862, *supra; Murphy v Telesha, supra; De Camp v Good Samaritan Hosp., supra*), but here the distinguishing factor is that Dr. Nathanson did not serve on the panel at which his lawyer appeared. What we must decide is whether an appearance of impropriety was created by Dr. Nathanson's relation-

ship with the lawyer who represented defendant Dr. Calame before the associate panel in the same legal action.

The test, of course, is not whether actual bias existed, but whether the circumstances gave rise to the appearance of bias or what might reasonably be regarded as bias (*De Camp v Good Samaritan Hosp.*, 66 AD2d 766, *supra*). Although it is not directly binding on the instant case because judicial conduct is not in issue, Canon 3C of the Code of Judicial Conduct provides a relevant guide. That canon states that disqualification should follow in a proceeding in which a Judge's "impartiality might reasonably be questioned". Under the canon, any conduct that would lead a reasonable man knowing all the circumstances to harbor doubts about the panelist's impartiality, is a basis for disqualification (see Thode, Reporter's Notes to Code of Judicial Conduct, p 60; *Potashnick v Port City Constr. Co.*, 609 F2d 1101). The test seeks to guarantee not only that a biased Judge or quasi-judicial official will not participate, but also that no reasonable person will suspect as much (see Disqualification of Judges and Justices in the Federal Courts, 86 Harv L Rev 736, 745).

Where a panelist's attorney represents a defendant whose conduct is in issue before the panelist, the possibility that the panelist may be favorably disposed toward his attorney's client because of his own relationship with the attorney creates an appearance of bias. Although the court cannot know whether the result actually was influenced by the relationship, the findings of such a panel must be vacated to protect the integrity of the decision-making body (see *Schmitt v Kantor*, 83 AD2d 862, *supra; De Camp v Good Samaritan Hosp.*, 66 AD2d 766, *supra*). In our view, the public will not likely distinguish between a panelist whose attorney appears before his own panel and a panelist whose attorney appears before an associate panel closely involved in the same case, especially when the liability of the physician defendants is asserted to be interrelated. While we neither know nor imply that Dr. Nathanson's judgment was influenced by Gordon & Silber's appearance in the case, it is the possibility of such influence that creates an appearance which the judicial system cannot abide. We therefore conclude that a reason-

able person might entertain doubts about Dr. Nathanson's impartiality, and to protect public confidence in the malpractice panel system, we disqualify him from service on the panel in this case.

Defendant Calame contends, however, that even if Dr. Nathanson improperly served on one of the panels, only the findings of that panel should be vacated. The answer, of course, is that since we have determined that Dr. Nathanson's presence created an appearance of bias, it tainted both panels. Although the doctors on the two panels were different, the Judge and lawyer panelists were the same persons. With excessiveness of radiation a major issue and the alleged acts of malpractice allegedly interrelated, we cannot evaluate how a determination of no liability reached relative to one physician defendant by the lawyer, Judge and doctor who comprised his panel influenced the same Judge and lawyer as well as the doctor who considered the case against the other physician defendant. Since confidence in the judicial process is at stake, it suffices that under the circumstances of this case reasonable persons might doubt the impartiality of the panelists due to their interactions with Dr. Nathanson on issues that have some relation to each other. Therefore, the panel findings relating to Dr. Calame must be vacated as well.

While we recognize that our holding presents a furth obstacle to the productive use of medical malpractice panels, particularly in those geographic areas where the numbers of available medical specialists and malpractice defense attorneys are limited, a party's right to an impartial panel is not to be overridden by the practical problems involved in the creation of such panels. Accordingly, the findings of both medical malpractice panels should be vacated and the matter remitted for *de novo* hearings before new panels.

DAMIANI, J. P., GULOTTA and BRACKEN, JJ., concur.

Upon appeal by permission, order of the Supreme Court, Kings County, dated July 26, 1982, reversed, with one bill of costs, motion to remove Dr. Nathanson from the medical malpractice panel granted, the findings of the two panels

convened in this action are vacated and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith.