OPINION OF THE COURT
Nicholas A. Clemente, J.
This action for medical malpractice appeared for a panel hearing on January 8, 1986 before a panel consisting of Justice Composto, Dr. John W. Finn (an obstetrician/gynecologist), Dr. Aaron J. Cagan (an anesthesiologist), and an attorney, Lance Armstrong. Meanwhile, Dr. Finn was a defendant *391 in a different malpractice action where he was represented by Schiavetti, Begos and Nicholson, Esqs., the same attorneys that are representing one of the defendants in this action, namely, Reno Tempesta.
The panel found against plaintiffs who then moved to set its finding aside. While an order was never settled, the motion was denied because it appeared that disclosure of the relationship was made to plaintiffs attorney prior to the panel hearing, although in another action. My decision was primarily based upon the ability of plaintiffs to explore any bias by examining the physician during trial.
Dr. Finn, however, died in April 1986, and plaintiffs now move again for relief vis-á-vis the panel requesting that the court preliminarily charge the jury about Dr. Finn’s death and his alleged conflict of interest, or, in the alternative, that the panel finding be set aside.
In opposing the motion, defendant Tempesta contends that Dr. Finn never had a conflict of interest because as an obstetrician, he sat on the panel in judgment of defendant obstetricians Mayes and Brevetti, parties that are not represented by Schiavetti, Begos and Nicholson, while their client, defendant Dr. Tempesta, is an anesthesiologist. Defendant Tempesta also contends that plaintiffs are free to call panel members Cagan and Armstrong as witnesses at trial to obtain information regarding the panel.
Defendant Brevetti, following the Tempesta approach, argues that he had no prior contact with Dr. Finn who found in his favor and that to set such finding aside would be prejudicial.
The panel involved in the instant case suffers from two deficiencies. One is the serious allegation of conflict of interest and the second is the fact that the individual around whom such allegation revolves is deceased. Hence, I conclude that the panel finding should be set aside and a new panel held as expeditiously as possible.
Judiciary Law § 148-a (8) provides:
"8. If the three members of the panel concur as to the question of liability, a formal written recommendation concerning such question of liability shall be signed by the panel members and forwarded to all parties. In such event, the recommendation shall be admissible in evidence at any subsequent trial upon the request of any party to the action. The recommendation shall not be binding upon the jury or, in a *392 case tried without a jury, upon the trial court, but shall be accorded such weight as the jury or the trial court chooses to ascribe to it.
"If the recommendation is read to the jury or by the trial court, the doctor member or the attorney member of the panel, or both of them, may be called as a witness by any party with reference to the recommendation of the panel only. The party calling such witness or witnesses shall pay their reasonable fees and expenses.”
The Court of Appeals in Bernstein v Bodean (53 NY2d 520) discussed the subject of the examination at trial of panel members. In setting the parameters of such examination, the court stated at pages 528-529:
"The examination of the panel members can only be comprehended as in furtherance of the legislative objective and thus a means to assist the triers of fact, be they jurors or Judge, to assess the probative worth of the panel’s recommendation. The procedure prescribed for selection of the panel members and the statutory authorization for receipt in evidence serve to authenticate the reliability and to establish the admissibility of the recommendation. There remains, however, for the triers of fact the question of what weight shall be ascribed to it. It is at this point that the statutorily prescribed examination of the panel members becomes significant. Subject to limitations imposed by the adverb 'only’, examination is authorized as to any matter which may reasonably assist the triers of fact in judging the significance and probative worth properly to be accorded the panel’s recommendation. Thus, by way of illustration but not of limitation, such examination might extend to the recommendation itself, the procedures followed by the panel, the materials (documentary and testimonial) considered by the panel, the opportunities for deliberation, the extent of deliberation, the interim and final votes or statements of position of the individual panel members, the education, training and experience of the panel members with respect to the particular issues involved, the factual predicates and the medical bases on which and the reasoning processes by which the panel and its individual members reached tentative and final conclusions. In short, any line of inquiry should be permitted which is found by the Trial Judge in the circumstances of the particular case not to be otherwise inadmissible and to be relevant and material to the assessment by the triers of fact of the evidential persuasiveness of the recommendation.
*393 "Two limitations must be recognized and a word of guidance uttered. First, the statute contains the restrictive adverb 'only’. We take this to mean that examination shall not be permitted as to the qualifications of the panel member generally but shall be exclusively focused on his qualifications related to and his participation in the panel recommendation. Nor may he be asked to express opinions on hypotheses other than those before the panel. In short he is not to be made an expert witness on behalf of any litigant, but may be examined only with respect to the panel recommendation.”
The concept of broad examination of panel members permitted by Bernstein (siipra) is pertinent here because it shows that upon Dr. Finn’s death the parties were divested of an opportunity to obtain the medical basis and reasoning resulting in a finding against plaintiff. Considered otherwise, it would be unfair to introduce a panel finding as evidence while depriving a party of his right to extensively examine the panel member at trial. Thus, when death occurs, especially of a medical panelist, it follows that a new panel should be held where the panel’s findings are adverse to one of the parties.
Nor may the panel requirement be disregarded as a mere procedural device since the Legislature by the enactment of Judiciary Law § 148-a has made the panel finding evidentiary in nature. Further, the courts have held that a finding may even constitute evidence to establish a prima facie case (see, Lipsius v White, 91 AD2d 271, 278).
The conclusion to direct the holding of a new panel is fortified by the possible bias of Dr. Finn. While a delay in objecting to the panelist as well as the opportunity to ameliorate the effect of bias by examination of the panelist before the jury would constitute grounds to deny the motion (cf. Santola v Eisenberg, 96 AD2d 716; Luce v St. Peter’s Hosp., 85 AD2d 194), nevertheless, it is uncontroverted that Dr. Finn was represented in another action by the same attorneys that are representing defendant Tempesta in this action. In Scott v Brooklyn Hosp. (93 AD2d 577), a case with facts similar to the case at bar, Justice Lazer stated at page 580: "Where a panelist’s attorney represents a defendant whose conduct is in issue before the panelist, the possibility that the panelist may be favorably disposed toward his attorney’s client because of his own relationship with the attorney creates an appearance of bias. Although the court cannot know whether the result actually was influenced by the relationship, the findings of *394 such a panel must be vacated to protect the integrity of the decision-making body (see Schmitt v Kantor, 83 AD2d 862, supra; De Camp v Good Samaritan Hosp., 66 AD2d 766, supra). ”
Plaintiff having failed to obtain a new panel and now, by death, cheated of an opportunity to impeach the witness on the grounds of bias, the inescapable conclusion is that the instant panel finding be set aside. Moreover, as in Scott (supra), the finding must be set aside as to all defendants, even those not judged by Finn, since there is no indication that the allegations against the various defendants are not interrelated —thereby tainting the entire panel proceeding.
Accordingly, I conclude that plaintiffs’ motion should be granted to the extent of vacating the panel finding. The medical malpractice clerk of this court shall schedule a new panel for this action as expeditiously as possible.