**Sanders v Ontario County Bd. of Elections**

2025 NY Slip Op 31591(U)

May 2, 2025

Supreme Court, Ontario County

Docket Number: Index No. 141268/2025

Judge: Thomas G. Leone

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT
COUNTY OF ONTARIO      STATE OF NEW YORK

KYLE D. SANDERS, Objector,

          Petitioner,

  -vs-

                        Index No. 141268-2025

ONTARIO COUNTY BOARD OF
ELECTIONS and
JASON MACBRIDE, Purported
Candidate,
          Respondents.

BEFORE:     HON. THOMAS G. LEONE
               Acting Supreme Court Justice

APPEARANCES:

        JOSEPH T. BURNS, ESQ.
        Attorney for Petitioner

        GREGORY J. MCDONALD, ESQ.
        EDWARD P. HOURIHAN, JR., ESQ.
        Attorneys for Respondent Board of Elections

        JASON ALLEN MACBRIDE, ESQ.
        *Pro Se* Respondent

## DECISION, ORDER, & JUDGMENT

LEONE, J.

In this proceeding, objector Kyle Sanders (hereinafter, "Petitioner") seeks an order pursuant to Election Law Articles 6 and 16 and Sections 16-100, 16-102, and 16-116 invalidating or declaring null and void the Republican designating petition filed by Jason MacBride, Esq. (hereinafter, "MacBride") for Ontario County District Attorney for the 2025 primary and/or general election.

Petitioner also requests an order preventing, prohibiting, and/or enjoining Respondent Ontario County Board of Elections (hereinafter, "the BOE") from placing MacBride's name on the

1

[* 1]

2025 primary and/or general election ballots as a Republican candidate for Ontario County District Attorney.

To qualify to be placed on the ballot, MacBride requires a minimum of 1,000 valid signatures. On April 2, 2025, MacBride[1] filed a designating petition containing 1,436 signatures. The BOE Commissioners reviewed the filing, determined that it passed *prima facie* review, and accepted the filing.

On April 7, 2025, Petitioner filed a general objection to the designating petition, followed by specific objections on April 14, 2025. The specific objections challenged all 1,436 of MacBride's signatures. In total, Petitioner levied 492 specific objections against MacBride's petition. Petitioner commenced this action the same day.

On April 21, 2025, the BOE heard Petitioner's specific objections and invalidated 270 of MacBride's signatures, leaving MacBride with 1,166 valid signatures. Because MacBride had more then the minimum 1,000 signatures, the BOE found that MacBride's petition was valid.

On April 22, 2025, the parties appeared before this Court virtually for a scheduling conference. At that time, the Court offered to schedule an evidentiary hearing. The parties all stated that there was no need for an evidentiary hearing, and the matter could be decided based on the papers submitted to the Court and the parties' legal briefs. Accordingly, the Court set a briefing schedule, and the parties submitted legal memoranda.

Also at the April 22, 2025 appearance, the Court asked all parties and attorneys to review the documents filed on NYSCEF and, if there were any concerns about additional or alternative proof being needed for the Court to determine the issues at bar, the parties were to file a letter on NYSCEF stating their position by 2:00 PM that day. No party filed any letter.

On April 29, 2025, the parties appeared before the Court for oral argument of the instant petition. The parties again agreed that there was no need for an evidentiary hearing, and that the matter could be decided based on the submissions filed on NYSCEF (*see Matter of McGuire v. Gamache*, 5 NY 3d 444 [2005] [Supreme Court offered to conduct an evidentiary hearing]). At the end of that appearance, the Court asked Counsel for the BOE to prepare a spreadsheet stating, with either a "G" (for objection granted or sustained) or "D" (for objection denied or overruled), how the BOE ruled on each of the 492 specific objections. The Court asked for the BOE to file that document on NYSCEF by 5:00 PM on April 29, 2025. The Court also directed the other

---

[1] MacBride's petition was filed by an agent.

2

parties, if they had any issue with the accuracy of the BOE's spreadsheet, to file a document on NYSCEF indicating their opposition by 11:00 AM on April 30, 2025. Counsel for the BOE filed that spreadsheet as requested (NYSCEF # 50), and no party filed any objections thereto.

MacBride has not requested that this Court validate any of the signatures the BOE invalidated. Thus, the Court does not rule on any objections already sustained by the BOE.

The Court has considered all the submissions of the parties, and the Court has decided all of the objections not already sustained by the BOE.

### STANDARD & BURDEN OF PROOF

"A petition filed with the Board of Elections 'shall be presumptively valid if it is in proper form and appears to bear the requisite number of signatures, authenticated in a manner prescribed by this chapter,' and 'this validity can only be destroyed where a challenge is brought on particularized grounds'" (*Matter of Biamonte v Savinetti*, 87 AD3d 950, 953 [2nd Dept 2011], *quoting* Election Law § 6-154 [1] and *Matter of McLiverty v Lefever*, 133 AD2d 720, 721 [1987]). "As the party attacking the validity of the designating petition, [Petitioner bears] the burden of proof" (*Toles v Quintana*, 183 AD 3d 1290 [4th Dept 2020]).

Election Law Article 6 governs designating petitions. Based on the mandates set forth in Article 6, New York jurisprudence distinguishes between two types of errors affecting designating petitions: (1) errors as to form, for which only "substantial compliance" is required, and (2) errors as to substance regarding matters "of prescribed statutory content," which demand strict compliance with statutory mandates (*see Quinn v Erie Co. Board of Elections*, 120 AD 3d 992 [4th Dept 2014]). The first type of error is often harmless, while the second is usually fatal (*see e.g., Seawright v Bd. of Elections in City of New York*, 35 NY 3d 227, 233,34 [2020] [discussing the continued importance of "'strict compliance with the election law,' which provides 'no invitation for the courts to exercise flexibility in statutory interpretation"]).

### ALLEGED COVER SHEET DEFICIENCY

Petitioner's challenge to the cover sheet is not persuasive, as it is an issue of form over substance. Election Law § 6-134(2) requires designating petitions to "be delivered to the [BOE] in the manner prescribed by regulations" (Election Law § 6-134[2]). 9 NYCRR Part 6215 sets forth the regulations for filing and handling the designating petitions at the BOE (*see Murray v Simon*, 194 AD 3d 894, 896-97 [2nd Dept 2021]). However, Part 6215.6 also directs courts to liberally construe those rules, disregarding "technical defects . . . where there has been substantial

[* 3]

3

compliance and where a strict construction is not required for the prevention of fraud" (9 NYCRR § 6215.6). Section 6215.8 provides two "sample forms" of cover sheets: one for "Designating and Independent Petitions," and the other for "Designating and Independent Petitions Filed In New York City and Counties Which Utilize Petition Identification Numbering Systems" (9 NYCRR § 6215.8). MacBride used the second of the two sample sheets.

Petitioner's reliance upon *Saunders v Egriu*, 183 AD 3d 1291 (4th Dept 2020), is misplaced. *Saunders* dealt with errors in cover sheets which incorrectly identified the parties for which the designating petitions were filed. The Court found that those errors "were not mere violations 'of some technical requirement having no logical bearing upon the underlying purpose of preventing fraud,'" and that "the errors in the original cover sheets could 'serve to frustrate the filing of general objections pursuant to Election Law 6-154'" (*Saunders* at 1293).

Petitioner did not establish how the use of this sample form was likely to result in fraud, frustrate the objection process, or otherwise compromise the integrity of the electoral process. Nothing in the Election Law or Part 6215 mandates that a candidate must use one of these sample forms over the other. Therefore, the Court finds that this is an issue of form over substance which is not fatal to the designating petition (*see Brace v. Scaringe*, 96 AD 2d 1012 [3rd Dept. 1983] [where an alleged irregularity appearing on a cover sheet "did not involve information required to be present by statute," the irregularity was not fatal).

MacBride's petition contained all the statutorily prescribed content that must be in a valid cover sheet (9 NYCRR §§ 6215.2 and 6215.8). Therefore, MacBride's cover sheet complied with the statutory requirements and was proper (*see Matter of Regan v Starkweather*, 186 AD 2d 980 [4th Dept 1992]; *Matter of Toporek v Beckwith*, 32 AD 3d 684 [4th Dept 2006]).

As for Petitioner's argument that the cover sheet is defective because it stated the total number of volumes in the petition, but it did not state what volume it purports to be, that argument is not persuasive. The current version of the Election Law and Title 9 does not require this information (*cf. Rubinstein v Board of Elections of State of NY*, 122 AD 2d 974, 974-75 (3rd Dept 1986 [discussing a prior version of Election Law Section 124[2]). Even if that were not the case, Petitioner's objection is unduly pedantic because MacBride filed a single volume. The cover page correctly states that there is one volume. Given that there was only one volume, MacBride did not need to state what volume it purported to be because it could only be one of one.

4

[* 4]

### SUBSCRIBING WITNESS NOT STATING PROPER ADDRESS OF RESIDENCE

Petitioner objected to pages **25, 40, 42, 63, 6, 70, 87, 101, and 102** on the grounds that the subscribing witnesses did not state their correct address of residence. MacBride opposed, stating that that the "Witness is a registered ontario county republican [*sic*]. Signatures of subscribing witnesses cannot be challenged on the basis of subscribing witness not living at address. EL 6-132(2)."

Election Law § 6-132(2) requires a subscribing witness to set forth their residential address. However, in the Fourth Department, "unless the voter registration cancellation procedures of the Election law are followed prior to petition circulation, the signatures collected by a subscribing witness who is registered to vote cannot be challenged on the basis of the subscribing witnesses' not residing at the address given" (New York Board of Elections 2025 Election law Update at 39, *citing Matter of Hosley v. Curry*, 85 NY 2d 447, 452 [1995] ["the Board of Elections' prior determination, statutorily deemed presumptive evidence of respondent's residence for voting purposes, is entitled to weight"]; *Matter of Carney v Ward*, 120 AD 3d 995, 996 [4th Dept. 2014]).

Furthermore, the Fourth Department has held that:

> Where an alleged impropriety "does not involve the 'substantive requirements of witness eligibility,' (i.e., that respondent is a duly qualified voter of the state and an enrolled voter of the same political party as the voters qualified to sign the petition])and 'there is no implication of fraud, resort to strict construction should be avoided if it would lead to injustice in the electoral process or the public perception of it'. We therefore conclude, contrary to petitioner's contention, that strict construction of Election Law § 6-132 (2) is not necessary with respect to respondent's specification of the address on the witness statement (*Matter of Vescera v Karp*, 131 AD3d 1338, 1339 [4th Dept 2015]).

The BOE opposed many of these objections, offering proof that the BOE reviewed and overruled the objections because "(i) the address street name is either a former name for the street, a commonly known street name or abbreviation for the street name, and (ii) although the witness identified an incorrect town, he or she provided a complete address including zip code that allowed us to locate the witness in the Ontario County voter database." Furthermore, the BOE submitted a list of common and former names for streets and roads in the County. Finally, MacBride submitted proof of address (NYSCEF ## 17-18; *see also* Election Law 6-134[12] ["signature on a petition sheet shall not be deemed invalid solely because the address provided is the post office address of the signer provided that proof that such address is the accepted address of such signer

[* 5]

5

is provided to the board of elections no later than three days following the receipt of specific objections to such signature"]) for most of these objections. Petitioner did not offer any evidence in rebuttal.

On this record, Petitioner did not meet his burden of proof (*Iaboni v Sunderland*, 175 AD 2d 893 [2nd Dept 1991], *app den* 78 NY 2d 856 [1991]; *Malave-Dilan v Muniz*, 253 AD 2d 505 [2nd Dept 1998]; *Boyland v. Board of Elections of City of New York*, 104 AD 2d 463 [2nd Dept 1984]). Thus, the Court overrules Petitioner's objections on this issue.

## OBJECTIONS TO TOWN/CITY IN THE SIGNER'S LINE

Petitioner argued that many signatures were invalid because the signers did not specify whether they live in the City or Town of Geneva and Canandaigua, respectively. This argument is not persuasive. The Court agrees with *Hinkley v Egan*, 181 Misc.2d 921 (Dutchess Co. Sup. Ct. 1999). The absence of an explicit declaration with regards to whether the term "Geneva" or "Canandaigua" refers to the town or city does not invalidate a signature, whether it is an individual signatory or a subscribing witness. It is not disputed that both subdivisions are situated within the same county in this county-wide race, and they are both subject to voter roll verification by the same Board of Elections records.

"While the failure to distinguish between the respective city or town might make it more difficult to establish fraud and to quickly verify signatures, it is far from impossible to do so, and to do so in a timely fashion. Furthermore, it is no more onerous than the difficulties that are created by allowing signatories to omit their hamlet as part of their address" (*Hinkley* at 922-923, *citing Grancio v Conveney*, 60 NY 2d 608 [1983] [hamlet not needed if the correct town is given]).

Based on the foregoing, Petitioner is not entitled to relief on this basis.

## ABBREVIATION OF PLACE NAMES

Petitioner objected to the use of abbreviations for towns, cities, or streets and roads. However, the use of a common abbreviation is not fatal to a signature. Election Law§ 6-134(5) states: "[t]he use of customary abbreviations of addresses of such signers or witnesses, shall not invalidate such signatures or witness statement provided that the identity of the signer or witness as a registered voter can be established by reference to the signature on the petition and that of a person whose name appears in the registration poll ledgers" (Election Law § 6-134[5]).

6

[* 6]

The use by the signer of a designating petition of customary abbreviation of the address does not invalidate the signature so long as identity of the signer as a registered voter can be established by reference to the signature on the petition and that of a person whose name appears in the registration poll ledgers (Election Law 6-134 [5]).

In the instant case, for example, the town or city of "Canandaigua" was abbreviated to "CDGA" (Sheet 64, Lines 9-20). The Court finds that the various abbreviations used in the designating petition, including, but not limited to "CDGA" for "Canandaigua," or "Farm" for "Farmington," are sufficiently unique amongst the towns, villages, and hamlets of Ontario County that it could not be reasonably mistaken with any other municipality within the jurisdiction.

For the same reason, the use of abbreviations or common names of roads or addresses is also not fatal to any signature, whether of a signatory or a subscribing witness. Insofar as Petitioner argues the use of abbreviations frustrates the verification process given that it bears the same alleged defect as if it was written out in long form. As noted previously, "[w]hile the failure to distinguish between the respective city or town might make it more difficult to establish fraud and to quickly verify signatures, it is far from impossible to do so, and to do so in a timely fashion." (*Hinkley* at 922-923; *see also Berny v Bosworth*, 87 AD3d 948 [2nd Dept 2011] [finding use of "Town of N.H." as used sufficient given each signer was listed as residing in Great Neck, which was located in the Town of North Hempstead]).

### INCOMPLETE/INSUFFICIENT ADDRESSES

Petitioner correctly objected to the signer listing an incomplete or insufficient addresses. For every signatory or subscribing witness, the complete, correct residence address, including house number, street name, and county are prescribed statutory content (Election Law § 6-130; *Matter of Stoppenbach v Sweeney*, 98 NY 2d 431 [2002]; *Matter of Liepshutz v Palmateer*, 65 NY 2d 965 [1985]; *Matter of Hayon v Greenfield*, 109 AD 3d 920 [2nd Dept. 2013]). Thus, any signature that does not include this information, subject to the limitations discussed in the other sections of this decision, is invalidated.

### USE OF VILLAGE IN LIEU OF TOWN OR CITY

Petitioner objects to the use of villages in the town or city column. This objection is meritorious. Election Law § 6-134(12) states: "A signature on a petition sheet shall not be deemed invalid solely because the address provided is the post office address of the signer *provided that*

[* 7]

*proof that such address is the accepted address of such signer is provided to the board of elections no later than three days* following the receipt of specific objections to such signature" (Election Law § 6-134[12]). Where no such proof is submitted within that time frame, "there was no 'substantial compliance' with the Election Law,' and the trial 'court [will] properly invalidate . . . the signatures that did not comply with the town/city designation requirement" (*Matter of Ligammari v Norris*, 275 AD 2d 884, 884 [4th Dept 2000]).

"The failure of the signers to provide the 'town or city' of residence is a fatal defect and renders the designating petition invalid" (*Scamacca v Mahoney*, 104 AD2d 730 [4th Dept 1984] [holding that "the inclusion of a village as the 'town or city' of residence of a signer" was not valid]; *see also Canary v New York State Bd. of Elections*, 131 AD3d 793 [3rd Dept 2015] [use of village in city or town column "fails to accurately set forth his or her town or city on the face of the designating petition, invalidation of the signature will result"]).

There were several instances of a village or hamlet being listed in the town or city column. This occurred with the hamlet of Honeoye, the village of Bloomfield, the hamlet of Stanley, the village of Rushville, and the town of Clifton Springs. However, all of Petitioner's objections on this issue were sustained by the BOE. Thus, Petitioner already prevailed on this issue, and there are no signatures remaining which have not already been invalidated on this basis.

PRINTED SIGNATURES

In numerous objections, Petitioner challenged signatures because they were printed rather than signed. "To prevent fraud and allow for a meaningful comparison of signatures when challenged, a signature on a designating petition should be made in the same manner as on that signatory's registration form" (*Toles v Quintana*, 183 AD 3d 1290, 1292 [4th Dept. 2020]). However, to establish invalidity under this theory, Petitioner bore the burden of producing the voters' signature cards showing a script signature that was written in a manner different than what was on the designating petition (*Id.*; *see also Maclay v. Dispasquale*, 197 AD 3d 1504 [4th Dept. 2021]; *Matter of Lord v. New York State Bd. of Elections*, 98 AD 3d 622 [2nd Dept. 2012]). Petitioner did not submit the voter registration cards related to the challenged signatures, and thus Petitioner did not meet his burden of proof. Accordingly, all of the objections on this issue are denied.

8

[* 8]

## NOT REGISTERED VOTER, NOT ENROLLED REPUBLICANS, OR NOT REGISTERED AS SIGNED

Petitioner challenged many signatures – by both signatories and subscribing witnesses – on the grounds that the signer was not a registered voter, not an enrolled Republican, or not registered as signed. Only duly registered persons enrolled in the same political party of the primary race are eligible to sign designating petitions (Election Law § 6-132[1]; *Williams v. Pinkett*, 59 AD 2d 573 [2nd Dept. 1977], *app den* 42 NY 2d 806 [1977]).

While the burden of proof in other issues is on the Petitioner, when the challenge relates to signatories allegedly not being enrolled or registered, the burden of proof is on the candidate to prove registration (*Matter of Hinton v Howard*, 93 AD 2d 582 [2nd Dept 1983]). Absent sufficient proof of valid registration in the appropriate political party, the signature must be invalidated (*Hinton; see also Craig v Borrero*, 171 AD 3d 1944 [4th Dept. 2019]).

The BOE submitted proof of the valid registration and party enrollment status of several contested signers (NYSCEF ## 32 at 6, 41).[2] That proof established that the signers were registered voters enrolled in the Republican Party. Petitioner did not submit evidence in rebuttal. Thus, there is sufficient proof to sustain those seventeen signatures which the BOE verified.

However, the BOE's submissions did not address many of the registration/enrollment objections. MacBride conceded several of these objections (*see* Obj. ## 20, 27, 88, 104, 156, 207). For the remaining registration/enrollment objections that the BOE did not resolve, MacBride's proof was insufficient to meet his burden. The only proof MacBride offered relative to registration and enrollment status was an unsigned, unsworn, unauthenticated Microsoft Excel spreadsheet in PDF format (NYSCEF #15) e-filed by MacBride. The record does not establish who prepared the spreadsheet or how. For each of these objections, there is a conclusory statement, usually conveying some information about the voter, like their name, address, and party affiliation or registration/enrollment status. Sometimes, the spreadsheet does not even state whether the person at issue is a registered Republican (*see* Objection # 84).

---

[2] The BOE and MacBride's papers both refer to the BOE as validating a signature on Page 15 and at Line 2. That appears to be a clerical error. Petitioner's specific objections challenged Page 15, Line 1 on the grounds that the signer was not an enrolled Republican. Line one of Page 15 has a signature with an address of 5755 Barnes Road, Canandaigua. The BOE's voter records (NYSCEF # 41) show a Joseph Tobias registered at 5755 Barnes Road, Canandaigua.

9

The spreadsheet does not explain the author's basis of knowledge. Many times, the explanation simply says, "VALID – verify registration through voter rolls." However, no one filed copies of the relevant voter rolls with this Court. No BOE document in the record addresses the registration and enrollment status of these voters.

This proof is not sufficient to sustain these signatures, whether they be signatories or subscribing witnesses (*Matter of Hinton v Howard*, 93 AD 2d 582 [2ⁿᵈ Dept 1983]). Accordingly, where the record did not adequately establish that a signer was a registered voter enrolled with the Republican party, the signature is invalidated. Petitioner's remaining objections on this issue are overruled.

## ILLEGIBILITY

Petitioner raised many objections on the basis of legibility. For many of the objections, the Court does not agree that the text at issue is illegible to the point of being indecipherable. For those items that are wholly illegible, Petitioner did not offer official voter records to establish the invalidity of the allegedly illegible names or addresses. Therefore, Petitioner did not meet his burden of proof on this issue (*see Matter of Berney v Bosworth*, 87 AD 3d 948, 949 [2ⁿᵈ Dept 2011]; *Maclay v Dipasquale*, 197 AD 3d 1502, 1053 [4ᵗʰ Dept 2021]; *Hennessy v Bd. of Elections of County of Oneida*, 175 AD 3d 1777, 1779 [4ᵗʰ Dept 2019]).[3]

## ALTERATIONS TO SIGNATURES

Petitioner objected to signatures on the grounds that there were uninitialed, unexplained alterations to the signature. Because those alterations were not initialed by the signer or the subscribing witness, those objections are sustained (*Andrews v Albany County Board of Elections*, 164 AD 2d 960 [3ʳᵈ Dept 1990]); *King v Sunderland*, 175 AD 2d 896 [2ⁿᵈ Dept 1991]).

## CHALLENGES TO SUBSCRIBING WITNESS STATEMENTS – ALTERED OR INCORRECT DATE

Petitioner objected to multiple sheets (pp. 33, 85, 95) "because date in Witness Statement has been materially altered without the correction being initialed." The dates on these sheets are clearly not altered. These objections are overruled.

---

[3] The exception to this ruling is the aforementioned objections based on voter enrollment/registration where MacBride failed to meet his burden of proof.

[* 10]

## ALTERATION TO WITNESS STATEMENT

Petitioner also objected to page 33 on the grounds that the number of signatures in the Statement of Witness was altered without explanation or initial. Respondents oppose because Petitioner did not challenge the signature on this basis before filing his Memorandum of Law in this action. The Court agrees. Petitioner is precluded from asserting new "defects not listed in the specifications of objections before the [BOE] or in the order to show cause" (*Thomas v Blackwell*, 219 AD 2d 795 [4th Dept 1995]; *Matter of Levitt v Mahoney*, 133 AD 2d 516 [4th Dept 1987]; *Suarez v Sadowski*, 48 NY 2d 620 [1979]; *Venuti v Westchester Co. Bd. of Elections*, 43 AD 3d 482 [2nd Dept 2007]). The objection is therefore denied.

## SIGNATURE DOES NOT MATCH

Petitioner challenged multiple petitions by subscribing witness Robyn MacBride because her signature as a subscribing witness allegedly did not match her signature when she executed a petition as a signatory. The Court compared the numerous examples of Robyn MacBride's handwriting contained in the entire designating petition volume (*Trevisani v Karp*, 164 AD 3d 1586, 1587 [4th Dept 2018]). The Court disagrees that the signatures are markedly different.

Petitioner has not met his burden of proving that someone other than Robyn MacBride authored the signatures in her name. Accordingly, Petitioner's objections on this basis are denied.

## FRAUDULENT SIGNATURES

Petitioner challenged multiple signatures because they were allegedly "clearly fraudulent, both written by one person." "A designating petition will be invalidated if the challenger shows, by clear and convincing evidence, that the entire petition is permeated with fraud or that the candidate participated in, or can be charged with knowledge of, fraudulent activity" (*Matter of Vincent v Sira*, 131 AD3d 787, 788 [3rd Dept 2015], *lv app den* 25 NY 3d 914 [2015]; *Saunders v Mansouri*, 194 AD 3d 1490 [4th Dept. 2021]). Here, Petitioner did not meet that standard because there was insufficient proof presented to support the claim that one person signed for another (*cf. Dearmyer v Stachura*, 217 AD 3d 1454 [4th Dept 2023]; *Saunders v Mansouri*, 194 AD 3d 1490 [4th Dept. 2021]).

To the extent Petitioner argued these few instances of alleged fraud were sufficient to taint the entire designating petition, the Court does not agree that Petitioner met his burden of showing

11

"clear and convincing evidence that the designating petition was permeated with fraud" (*Dearmyer v Stachura*, 217 AD 3d 1454 [4ᵗʰ Dept 2023]).

Accordingly, the Court denies Petitioner's objections based on allegedly fraudulent signatures.

## PAGE 72

Petitioner's Memorandum of Law in Support contests any changes in the BOE's initial determination regarding all of page 72. However, Petitioner levied no specific objections regarding page 72 in front of either the BOE or this Court (NYSCEF # 4), and the BOE did not invalidate any signatures on that page (NYSCEF # 48 at 11). Accordingly, all of the signatures on that page remain unchallenged and therefore valid.

## CONCLUSION

Based on the foregoing, the following specific objections are hereby sustained: 15, 20, 27, 33-34, 84, 88, 93, 102, 104, 106-07, 110, 125, 128-29, 131, 143, 149, 156, 168, 172, 175, 188, 196, 199, 201, 204, 207, 209, 216, 218, 228-29, 295, 329, 339, 345-46, 355, 389, 400-02, 422, 431, 457, 465. All specific objections previously sustained by the BOE remain undisturbed. Petitioner's remaining specific objections are overruled.

MacBride needs 1,000 valid signatures to be placed on the ballot. His designating petition filed with the BOE originally had a total of 1,436. The BOE said that they invalidated 268 signatures (NYSCEF # 32 at 8), but, based on the Court's review of the record (*see* NYSCEF ## 50; 25 at 16), it appears that the BOE invalidated **272 signatures**. If the 272 signatures struck by the BOE are subtracted from the original 1,436, then MacBride came before this Court with **1,164** presumptively valid signatures. Based on the objections granted above, this Court has now struck an additional **50 signatures**. This leaves MacBride with **1,114 valid signatures**, more than enough to be placed on the ballot.

Accordingly, based on the foregoing and the submissions of the parties, it is hereby

ORDERED, ADJUDGED, and DECREED that the Petition seeking to invalidate the Republican Party designating petition filed with the Ontario County Board of Elections, purporting to designate Jason MacBride for Ontario County District Attorney for the 2025 primary and/or general elections and/or enjoining the Ontario County Board of Elections from placing the name

of Jason MacBride on the ballots as a Republican candidate for Ontario County District Attorney is DENIED.

Dated: May 2, 2025.

Hon. Thomas G. Leone,
Acting Supreme Court Justice

13