■ S & S HOTEL VENTURES LIMITED PARTNERSHIP, Appellant-Respondent, v 777 S. H. CORP., Respondent-Appellant.—Order of Supreme Court, New York County (Helen E. Freedman, J.), entered November 13, 1985, which disqualified the law firm of Bell, Kalnick, Beckman, Klee & Green from acting as plaintiff's trial counsel, is affirmed for the reasons stated by Special Term, without costs.

As conceded in the dissent, "Special Term's determination correctly applied the principles that have been adopted in this area of the law by this court and other Appellate Divisions".

The facts of the underlying action are fully set forth in both the opinion of Special Term and the dissent. A review of the

record discloses that Herman Sassower (who serves as counsel to the Bell, Kalnick firm sought to be disqualified) was the sole general partner of plaintiff, while also acting as its attorney together with Stephen Seldin of the Bell, Kalnick firm, at the time the loan agreement in issue was originally negotiated, and that he played an active and significant role not only in the drafting of that agreement but in the subsequent events regarding the proposed transfers of the hotel property covered by the agreement.

While defendant claims that both Herman Sassower and Stephen Seldin "ought to be called as witnesses" in this case, it is clear that it is Herman's involvement that is the focal point of the controversy. Defendant's papers are replete with instances of Herman Sassower's intimate involvement with both the negotiation of the agreement and the subsequent events surrounding its interpretation, particularly in connection with obtaining defendant's required consent to the proposed transfers of the hotel property and the "reasonableness" of defendant's withholding of that consent. It is asserted that the reasonableness or unreasonableness of defendant's conduct in that regard is directly dependent upon whether plaintiff timely and adequately supplied defendant with the information to which it was entitled regarding the proposed transferee. Defendant claims that it was Herman Sassower, at that time an officer of plaintiff's corporate general partner as well as plaintiff's attorney, who played the critical role in controlling the flow of that information.

It is clear that Herman Sassower's extensive personal involvement and knowledge of the facts here involved are far removed from the matters of formality to which an attorney-witness is ordinarily permitted to testify (Code of Professional Responsibility, DR 5-101 [B] [2]) and go to the core of the controversy. Indeed, the dissent itself acknowledges that Herman "has material information relevant to plaintiff's theory of liability" relative to a critical statement made in his presence which indicates that he "ought to be called" as a witness. Moreover, defendant asserts that if plaintiff does not call Herman Sassower on its case, defendant intends to do so.

Where, as here, the facts compel the conclusion that the attorney "ought to be called as a witness", disqualification of the firm with which he is associated is required even if the party whom he represents may not intend to call him as a witness, and even if the opposing party's stated intention to do so does not come to pass. (See, *MacArthur v Bank of New York,* 524 F Supp 1205 [SDNY]; *Hempstead Bank v Reliance*

*Mtge. Corp.,* 81 AD2d 906; *North Shore Neurosurgical Group v Leivy,* 72 AD2d 598; *Grossman v Commercial Capital Corp.,* 59 AD2d 850; *Gasoline Expwy v Sun Oil Co.,* 64 AD2d 647; *1776 Assoc. v Lazrus,* 99 Misc 2d 370.)

The dissent's reliance upon its factual determination of lack of prejudice to either party in this case as a predominating factor for denying the disqualification of the Bell, Kalnick law firm is misplaced. The rationale for disqualification in a case where a party's attorney will or ought to be called as a witness was cogently set forth by this court in *Tru-Bite Labs v Ashman* (54 AD2d 345, 347) as follows: "An advocate who becomes a witness is in the unseemingly and ineffective position of arguing his credibility since the functions of an advocate and a witness are inconsistent. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when he also appears as a witness for his client. Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his continuing as an advocate (see Ethical Consideration EC 5-10 of the Lawyer's Code of Professional Responsibility as approved by the American Bar Association and adopted by the New York State Bar Association, effective January 1, 1970)."

While many of the arguments put forth by those who favor changing the present rules governing disqualification of counsel are highly meritorious and certainly more compatible with contemporary realities, we cannot ignore the fact that American Bar Association Model Rule of Professional Conduct 3.7, which would permit the result here urged by the dissent, has failed of enactment in this State. While it is to be hoped that serious reconsideration will be given to the advisability of revising the current rule which, despite its commendable purposes, frequently evokes serious disquietude by reason of its unfortunate and ofttimes draconian impingement upon the cherished right to freely select the counsel of one's choice, that rule nevertheless remains controlling and applicable to the instant litigation. The Justice at Special Term, exercising sensitivity and restraint within the parameters of that rule, struck an appropriate balance here in finding that disqualification of plaintiff's counsel's law firm is required but only as to the trial itself. Concur—Murphy, P. J., Fein and Ellerin, JJ.

Sandler and Kassal, JJ., dissent in a memorandum by Sandler, J., as follows: In an action by the plaintiff, S & S Hotel Ventures Limited Partnership, to recover damages from the defendant, 777 S. H. Corp., for an alleged breach by the

defendant of its promise not to withhold or delay unreasonably its consent to a sale of premises encumbered by a deed of trust, and for tortious interference by the defendant with plaintiff's performance of two contracts of sale, the plaintiff and the defendant cross-appeal from an order of Special Term disqualifying the firm of Bell, Kalnick, Beckman, Klee & Green (Bell, Kalnick) from acting as plaintiff's trial counsel in this action. Plaintiff appeals from the order to the extent to which it disqualified Bell, Kalnick from acting as trial counsel; defendant appeals from the order to the extent that the disqualification was limited to that firm's acting as trial counsel.

The ground advanced by defendant for the disqualification of plaintiff's counsel was that two lawyers associated with Bell, Kalnick, one "of counsel" to Bell, Kalnick and the other a member of the firm, "ought to be called" as witnesses in the action pursuant to Code of Professional Responsibility DR 5-101 (B); DR 5-102 (A), (B).

In a thoughtful opinion, acknowledging that it was questionable whether Herman Sassower, of counsel to Bell, Kalnick, "ought to be called" as a witness, Special Term granted the motion to disqualify to the extent indicated in accordance with the principle that in such a situation all doubts should be resolved in favor of the lawyer testifying and against his continuing as an advocate.

Let me agree at the outset that Special Term's determination correctly applied the principles that have been adopted in this area of the law by this court and other Appellate Divisions. (See, e.g., *Tru-Bite Labs v Ashman,* 54 AD2d 345; *Grossman v Commercial Capital Corp.,* 59 AD2d 850; *RAV Realty Corp. v Union Fed. Sav. & Loan Assn.,* 63 AD2d 609; *Gasoline Expwy v Sun Oil Co.,* 64 AD2d 647; *North Shore Neurosurgical Group v Leivy,* 72 AD2d 598; *Hempstead Bank v Reliance Mtge. Corp.,* 81 AD2d 906.)

In nonetheless concluding that disqualification is inappropriate in the circumstances disclosed by this record, I do so in the belief that the principle of literal compliance with the apparent requirements of the relevant disciplinary rules should be judicially reconsidered in light of the growing scholarly and professional judgment that the concerns that led to the adoption of DR 5-101 (B) and DR 5-102 (A) and (B) were in large part overstated and unrealistic, and that the result of a literal application of those rules to a motion to disqualify in many instances deprives parties unjustifiably of the right to counsel

of their own choosing without serving any adequate counterbalancing values.

This growing professional judgment, in my opinion convincingly supported by any serious analysis of the problem, is underlined by American Bar Association Model Rule of Professional Conduct (Model Rule) 3.7, one of the Model Rules adopted after extensive study, which excludes vicarious disqualification of an entire law firm in situations in which an attorney in the firm is to testify at the trial in an action. It is of course true that the Model Rules were not adopted by the New York State Bar Association, and that the disciplinary rules in issue continue to govern professional conduct in this State. It is significant, however, that the minority report of the New York State Bar Association Committee which opposed adoption of the Model Rules as a whole, and whose position was adopted by the Association, agreed that the vicarious disqualification rule should be changed in the manner embraced in Model Rule 3.7.

The facts of this case illustrate clearly how a literal application of the disciplinary rules in a motion to disqualify may, without any serious justification, deprive a party of counsel of its own choice. In effect, the plaintiff, a sophisticated business entity, whose principals are fully informed as to the relevant circumstances, has been deprived of the right to counsel of its own choosing on the basis of the defendant's claim, which the plaintiff vigorously disputes, that plaintiff will be prejudiced if lawyers associated with plaintiff's chosen law firm do not testify in the action. The untenability of the result dictated by a literal compliance with the disciplinary rules is underlined by the circumstances that Herman Sassower, the lawyer whose supposed material knowledge provided the principal predicate for Special Term's order, was until recently the general partner in the plaintiff, and continues to be one of plaintiff's principals.

The lawsuit had its genesis in a $15 million loan secured by plaintiff from the defendant for improvements to plaintiff's hotel in Houston, Texas. The loan was evidenced by a promissory note secured by a deed of trust which provided that the loan was to become immediately due if plaintiff transferred title to the hotel without consent. The deed of trust also provided that defendant would not unreasonably withhold or delay such consent and that, in determining whether to grant or withhold its consent, defendant could consider the financial ability of the proposed purchaser, its character and reputa-

tion, and its experience in the operation of commercial real estate of a similar size and nature.

It was alleged in the complaint, and reaffirmed in the papers submitted by the plaintiff on the motion to disqualify, that plaintiff entered into two agreements of sale that could not be closed as planned because of defendant's unreasonable refusal to consent. As to one such agreement, plaintiff alleges that defendant acknowledged that it had withheld its consent because defendant preferred that plaintiff should sell the property to another purchaser. As to the second agreement, plaintiff asserts that defendant said that it would not consent to the proposed transfer unless the existing loan was restructured to provide more favorable terms for the defendant. The theory of plaintiff's case is that the reasons allegedly assigned by defendant for withholding its consent were not reasonable within the contemplation of the controlling language of the deed of trust. Plaintiff alleges that as a result of the defendant's actions it was required to sell the property at a sharply reduced purchase price.

Much that was advanced by defendant in support of the claim that the two lawyers associated with plaintiff's law firm "ought to be called" as witnesses seems to me clearly meritless.

Thus, defendant asserted that Herman Sassower, of counsel to Bell, Kalnick, and Stephen Seldin, a member of the firm, actively participated in the negotiating and drafting of the instruments in issue and therefore should be called as witnesses with regard to the circumstances that led to the execution of those instruments. However, there is no colorable showing that the critical language in these instruments is ambiguous and that parol evidence will be appropriate or necessary to explain its meaning.

Defendant further alleged that Herman Sassower participated actively in discussions with defendant's lawyers and principals during the periods of time in which plaintiff was seeking defendant's consent to the two agreements of sale, and that he therefore has information material to the issues in the case. This argument would be persuasive if there was any reason to believe that plaintiff's case depended upon information and knowledge acquired by Herman Sassower in that capacity. However, it appears clearly from the allegations in the complaint, and is explicitly repeated in the affidavits submitted by plaintiff on this motion, that its case rests entirely on the two statements attributed to the principals of the defendant referred to above, which statements, the plain-

tiff contends, established that consent was withheld by the defendant for improper reasons. These statements were made to Philip Sassower, president of plaintiff's general partner, on whose testimony plaintiff asserts it intends to rely.

Finally, defendant alleges that if plaintiff does not call Herman Sassower on its case, defendant intends to do so, and that it expects to develop from Mr. Sassower information that would be prejudicial to the plaintiff. Apart from the curious inconsistency of this claim with defendant's other contention that plaintiff would be prejudiced by the failure to call Herman Sassower, defendant's papers are vague and conclusory as to how plaintiff would be prejudiced if the defendant should call Herman Sassower.

Notwithstanding the above, the record does disclose a basis for the inference that Herman Sassower has material information relevant to plaintiff's theory of liability. As already observed, plaintiff's case rests upon the contention that defendant made two statements disclosing that its withholding of consent was for an improper reason and therefore not reasonable within the meaning of the deed of trust. It is asserted that these statements were made to Philip Sassower, president of plaintiff's general partner, and that plaintiff intends to rely upon his testimony with regard to these statements to establish its case. However, it clearly appears that one of these statements was allegedly made in the presence of Herman Sassower as well. If, as seems likely, Philip Sassower's testimony is contradicted by the representatives of the defendant present on the occasion on which this statement was allegedly made, it would seem that plaintiff's case might well be impaired by the failure to call Herman Sassower to confirm the testimony of Philip Sassower.

In short, we are confronted with a situation in which it may reasonably be thought that a lawyer associated with plaintiff's firm "ought to be called" as a witness, but in which it also appears that the principals of the plaintiff, fully informed as to all the relevant circumstances, have made a carefully considered decision to proceed with their chosen counsel even though this decision means that, as a result, they may not call a witness who has material information in support of their case. It is relevant to the issue presented that Herman Sassower, in addition to being "of counsel" to Bell, Kalnick, was also the general partner of the plaintiff during much of the period with which we are concerned, and continues to be a principal in the plaintiff. The inference is inescapable that Herman Sassower and his brother Philip, now president of

plaintiff's general partner, both fully aware of the relevant facts and the options presented, have made a carefully considered decision to proceed with Bell, Kalnick as their attorney in what they believe to be plaintiff's best interest.

Under the circumstances presented, I am persuaded that the issue should be resolved in favor of plaintiff's right to counsel of its own selection in the absence of any showing, indeed of any claim, that defendant will be prejudiced if plaintiff's law firm is not disqualified. In reaching this conclusion, I have been influenced by the belief that, as presently worded, the relevant disciplinary rules inappropriately, and without adequate justification in many instances, deny parties the right to counsel of their own choosing. I am also persuaded that this view represents, as reflected in Model Rule 3.7, the overwhelming weight of informed professional judgment today, and that the principle embodied in Model Rule 3.7 would have been adopted by the New York State Bar Association if the question could have been separated from controversial questions related to other proposed model rules.

It is unnecessary to this opinion to set forth in detail the analysis of the current rules that led to the contemporary professional judgment on the issue. In a law review note that remains the most systematic and searching study of the question, the essential lack of merit of the concerns that led to the adoption of the disciplinary rules was convincingly demonstrated. *(The Advocate-Witness Rule: If Z, Then X. But Why?,* 52 NYU L Rev 1365.) As the author there concluded (at 1397): "The underpinnings of the advocate-witness rule are simply not sturdy enough to warrant its per se application in the typical situation. The varying rationales offered to justify the rule are either contradictory or based on a belief in the impropriety of a testifying advocate that is neither supported by empirical data nor rooted in some widely held ethical principle. Revision of the rule to make the client's choice of counsel controlling is, in contrast, supported by a realistic evaluation of the impact of disqualifying a client's chosen counsel."

Notwithstanding the above, we are confronted with the reality that the conduct of lawyers in this State continues to be governed by DR 5-101 (B); DR 5-102 (A), (B). In applying the rules as they now are in a situation in which an informed party makes a considered decision to proceed with his chosen counsel, I think analysis should start with the recognition that the question of whether a witness "ought to be called" on behalf of a party is often a matter of judgment as to which

reasonable people may disagree, and that an adequately informed party is likely to be in the best position to determine what best serves its own interests. In the absence of any showing of prejudice to the party seeking disqualification of the other party's counsel (and here defendant explicitly disclaimed any prejudice to itself in its brief), I believe that any doubts should be resolved in favor of the right of the party to counsel of its own choosing. *(See, Foley & Co. v Vanderbilt,* 523 F2d 1357, 1359 [Gurfein, J., concurring].)

The overriding principle that should govern here is that set forth by the Court of Appeals in *Matter of Abrams (Anonymous)* (62 NY2d 183), a case involving the attempted disqualification of a lawyer retained by witnesses subpoenaed by the Attorney-General in a criminal investigation, and in which the court observed that similar policy considerations are often involved in both the criminal and civil contexts. The Court of Appeals said (at p 196): "We begin our consideration of this issue, which has not been previously addressed by this court, by recognizing that although an individual possesses no absolute right to representation by an attorney of his choice * * * any restriction imposed on that right will be carefully scrutinized * * * An individual's right to select an attorney who he believes is most capable of providing competent representation implicates both the First Amendment guarantees of freedom of association * * * and the Sixth Amendment right to counsel * * * and will not yield unless confronted with some overriding competing public interest".

Accordingly, the order of the Supreme Court, New York County (Helen E. Freedman, J.), entered November 13, 1985, which granted defendant's motion to disqualify the law firm of Bell, Kalnick, Beckman, Klee & Green to the extent of disqualifying that firm (although Herman Sassower is disqualified) from acting as plaintiff's trial counsel in this action, should be modified, on the law and on the facts, to deny the motion to disqualify in all respects.