■ Joseph A. Novaro, Appellant-Respondent, v Jomar Real Estate Corp. et al., Respondents-Appellants. [646 NYS2d 805] —Order of the Supreme Court, New York County (William Davis, J.), entered on or about April 24, 1995, which, *inter alia*, denied plaintiff's motion for summary judgment on the first through seventh causes of action, and judgment of the same court and Justice, entered May 9, 1995, which confirmed the determination of a Special Referee dated August 25, 1994 directing entry of judgment in the amount of $309,909 plus interest and disbursements in favor of plaintiff against defendants, and, which, *inter alia*, held that the Referee's determination with respect to the legal fees owed to Samuel Goldstein & Sons was outside the scope of the issues referred to the Referee, are unanimously modified, on the law and facts, to vacate the judgment of May 9, 1995 to the extent it confirmed the Referee's award in favor of plaintiff against defendants and to confirm that portion of the Referee's report which determined that defendant Jomar properly retained and paid Samuel Goldstein & Sons' legal fees, and to dismiss the sixth cause of action against Samuel Goldstein & Sons, and otherwise affirmed, without costs or disbursements.

Pursuant to an October 7, 1972 shareholders' agreement, plaintiff, defendant Peter Ralston and the late Carlo Seneca became shareholders of Jomar Real Estate Corp., whose primary asset was a parcel of property on Staten Island, upon which it had planned to build a shopping center. However, when condemnation proceedings were instituted against the property in 1973, Ralston and Seneca retained defendant Samuel Goldstein & Sons, a law firm, to represent them. In February of 1974, plaintiff Novaro contacted the law firm to protest the retainer being obtained without his consent. Although his fellow shareholders told him that they would no longer proceed without his consent, he subsequently learned that the Goldstein firm had represented the shareholders in the condemnation proceedings, in which Jomar was awarded $562,500, that it had appealed the condemnation award pursuant to a 25% contingent fee arrangement, and upon appeal the award had been increased to more than $2,000,000 (*Matter of City of New York [Jomar Real Estate Corp.]*, 94 AD2d 724, *affd* 61 NY2d 843) and that the law firm had billed the shareholders $500,000 for its services.

Plaintiff Novaro thereafter requested his pro rata share of the condemnation award pursuant to the shareholders' agreement. However, Ralston and Seneca refused and instead began a new entity, NRS Partners, with the proceeds, which they

maintained was necessary to avoid the tax consequences of the upward modification of the condemnation award. Jomar thereafter engaged in various transactions, in which it was represented by Avery Gross, Esq. Plaintiff then instituted this action against Jomar, his fellow shareholders and the Goldstein firm in which, in the first through seventh causes of action, he sought damages and an accounting based on a purported breach of the shareholders' agreement, waste of corporate assets, improper retention of counsel and overpayment of fees. In his eighth cause of action, plaintiff sought a termination of Jomar as well as the distribution of its assets.

The IAS Court granted a motion by plaintiff to the extent of directing an accounting of the affairs of Jomar and NRS Partners, and enjoined Ralston and Seneca from making any distributions or paying any dividends but denied plaintiff's request for partial summary judgment for a money judgment. That order was affirmed by this Court on appeal (163 AD2d 69). After hearings over the next $2^{1}/_{2}$ years, the Referee issued his report, which overruled plaintiff's objections with respect to the legal fee paid to the Goldstein firm but concluded that Seneca and Ralston had breached their duties as fiduciaries and had breached the shareholders' agreement, and recommended that judgment be entered in plaintiff's favor in the amount of $309,909. In a second report, the Referee recommended another hearing with respect to whether or not sanctions should be imposed against Ralston.

In the order appealed from, the IAS Court granted plaintiff's motion to confirm the Referee's report to the extent of directing that judgment be entered in the amount of $309,909 against Jomar, Ralston and NRS Partners and that a similar judgment against Seneca be stayed pending substitution of a legal representative. The court granted plaintiff's motion for sanctions and directed a hearing on the issue. The court also found that the Referee had exceeded the scope of his jurisdiction and authority by determining certain issues beyond the issue of the accounting and the declaratory judgment action, specifically the finding that Jomar properly retained and paid Goldstein & Sons for legal services rendered in connection with the condemnation award.

The record of the hearings before the Referee indicates that Avery Gross, Esq., who represented defendants, was an integral participant in and witness to the alleged self-dealing of defendants found by the Referee in his report. Gross "cross-examined" himself on the issue of his attorney's fees, which was a key issue in the accounting. The Referee, noting that

Mr. Gross should not have undertaken the legal representation of defendants pursuant to the Code of Professional Responsibility, stated: "Mr. Avery Gross is recorded in the closing as representing Jomar as to all matters other than the closing. Mr. Seneca testified that Mr. Gross also extended a loan to facilitate the closing. Whatever role Mr. Gross played, it was a partisan position."

The improper representation of defendants by Gross tainted the proceedings and warrants the setting aside of the hearings and the report and recommendations (see, Chang v Chang, 190 AD2d 311, 319).

However, Gross's representation of defendants did not vitiate that portion of the Referee's report which upheld the award to the Goldstein law firm of legal fees. The record indicates that the law firm performed in an exemplary manner and obtained outstanding success for its client Jomar Real Estate Corp. The firm has been held hostage in this long dispute between the parties as to funds the firm was instrumental in obtaining in the first instance. The testimony at the hearings refuted plaintiff's claim that the fee arrangements were not within his knowledge. Defendants have never sought relief against the law firm and plaintiff, although pleading an ambiguous direct claim against the law firm in the sixth cause of action, did not and does not now upon appeal seek any relief against the firm. He claims damages against the other shareholders for making the retainer agreement and "damages" against them for a claimed "excessive" portion of the fee, which he claims diminished his rightful share of the proceeds of the condemnation award. Such claims are based upon breach by the other shareholders of their contractual or intra-corporate obligations to plaintiff and would not give rise to an independent claim for indemnification against the firm since both Seneca and Ralston have asserted the fairness and reasonableness of the contingent fee arrangement and the fee ultimately paid. Accordingly, we confirm the Referee's report solely with respect to the award of legal fees to the Goldstein law firm. Concur—Milonas, J. P., Ellerin, Rubin, Nardelli and Tom, JJ.