OPINION OF THE COURT
Diana A. Johnson, S.
Petitioner Ebony Coleman moves to disqualify M. Douglas Haywoode, Esq. as trial counsel for respondent Stacy Robinson Jones, the executor of the estate.
Respondent Stacy Robinson Jones cross-moves to disqualify Seth Rubenstein Esq. and Nora Anderson, Esq. as trial counsel for petitioner Ebony Coleman.
Prior to the present motions being made, the underlying proceeding had been scheduled for trial. The proceeding seeks to compel distribution of a specific legacy. As is pertinent here, petitioner alleges that a parcel of real property was sold by the executor pursuant to the authority granted by preliminary letters issued pending probate for $650,000. The executor, however, alleges that the property was actually sold for $450,000. M. Douglas Haywoode, Esq. represented the executor at the closing for this property.
Mr. Haywoode, in opposition to petitioner’s motion, alleges that he should not be disqualified as he is the sole person knowledgeable of the history and nuances of the case. However, that is precisely the issue. Where an attorney representing a party was an active participant in a disputed transaction and has personal knowledge of the underlying circumstances, and it becomes obvious he ought to be called as a witness on behalf of his client, it is improper for him to continue representation (Chang v Chang, 190 AD2d 311 [1st Dept 1993]; Zaccaro v Bow *832 ers, 2 Misc 3d 733 [Civ Ct, NY County 2003]; Code of Professional Responsibility DR 5-102 [22 NYCRR 1200.21]). As Mr. Haywoode has intimate and personal knowledge concerning what occurred at the closing he ought to be called as a witness. Accordingly petitioner’s motion is granted and Mr. Haywoode is disqualified.
Respondent’s motion to disqualify Seth Rubenstein, Esq. and Nora Anderson, Esq. as trial counsel is denied as respondent has failed to articulate or set forth any meritorious basis for this requested relief.
While disqualification is not warranted based on respondent’s motion, as a member of the firm of Seth Rubenstein, EC. was, until December 31, 2007, this court’s chief court attorney and head of its law department, the issue of disqualification remains, dependent on whether an appearance of impropriety arises when he or his partners/associates appear in this court.
The attorney at issue, Mr. Leo Beitner, was appointed chief court attorney in 2005. He had been acting as the chief court attorney and head of this court’s law department from at least 1998. He left his position with the court effective December 31, 2007. He became associated with the firm of Seth Rubenstein, EC., a firm specializing in estate practice, at the end of January 2008. As Canon 2 of the Code of Judicial Conduct and 22 NYCRR 100.2 mandate a judge avoid even the appearance of impropriety, on April 21, 2008 this court sought direction from the Advisory Committee on Judicial Ethics regarding the propriety of Mr. Beitner and/or his associates appearing in this court on any estate which was referred to the law department during Mr. Beitner’s tenure as chief court attorney. In response, the Committee issued Advisory Committee on Judicial Ethics Opinion 08-91 dated June 6, 2008.
The Committee began its analysis with the overriding consideration that a court is mandated to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, citing 22 NYCRR 100.2 (A), which parallels Canon 2 of the Code of Judicial Conduct. The Committee advised that when Mr. Beitner appears here on cases that were pending in the court when he departed, questions may be asked of him as are relevant in determining if there is a conflict between his current role representing clients and his former role at the court. The answers to these questions would enable the court to evaluate whether his continued involvement would create an appearance of impropriety.
*833 The Committee advised that when Mr. Beitner’s partners and/or associates appear on cases that were pending while Mr. Beitner was employed here, they may be questioned to determine both Mr. Beitner’s involvement in the case while he was employed here, and the extent to which he had discussed the case with his partners and/or associates appearing on the case.
In the opinion, the Committee emphasized that they were addressing only the judge’s role with relation to his/her execution of judicial duties, and not the possible questions, if any, under the Code of Professional Responsibility concerning the propriety of the attorney’s appearance or that of the partner’s or associate’s appearance in such cases. Indeed the Committee expressly declined to comment on any issues in that regard, indicating they were beyond the Committee’s jurisdiction.
The underpinning for Canon 2 of the Code of Judicial Conduct that judges avoid even the appearance of impropriety is that it is basic to every judicial proceeding that “the appearance, no less than the fact, of impartiality and fairness, is an indispensable attribute of the judicial system which must be preserved in order to protect the integrity and dignity of the judiciary in the eyes of the community.” (Scott v Brooklyn Hosp., 93 AD2d 577, 579 [2d Dept 1983].) As such the test is “not whether actual bias existed, but whether the circumstances gave rise to the appearance of bias or what might reasonably be regarded as bias” (id. at 580).
The basic duties of a chief court attorney are contained in the title standards promulgated by the Unified Court System. A chief court attorney serves in a confidential capacity and is responsible for supervising a law department consisting of subordinate court attorneys, assigning cases to them and evaluating their completed work. In performing his duties as this court’s chief court attorney proceedings referred to the law department would be reviewed by Mr. Beitner and assigned to a member of the law department.[1]
This necessary familiarity with each proceeding assigned by him, without anything more, is sufficient to raise the appearance of impropriety in the minds of attorneys, the parties and the public when this now former chief court attorney appears on these same estates as a private attorney. It inescapably gives *834 both the other parties and the public the unmistakable appearance of impropriety. The parties and the public at large are entitled to protection against the appearance of impropriety, notwithstanding no evidentiary proof of actual prejudice is shown (People v Shinkle, 51 NY2d 417 [1980]). For the court to allow Mr. Beitner to now appear on these proceedings would be a dereliction of its duty, and its obligation to ensure “that the integrity of the decision-making body must be above reproach and even the appearance of impropriety should be avoided” (De Camp v Good Samaritan Hosp., 66 AD2d 766, 768 [2d Dept 1978]).
As such there is no need to question him separately when he appears as private counsel on any estate that was referred to the law department while he acted as chief court attorney. The necessary familiarity with the estates which he gained through his prior supervisory position with the court creates an appearance of impropriety in violation of Canon 2 of the Code of Judicial Conduct which cannot be overlooked or countenanced.
Separate and distinct from the court’s finding of an appearance of impropriety under Canon 2 of the Code of Judicial Conduct and 22 NYCRR 100.2, the court also finds that the necessary familiarity with estates which Mr. Beitner gained through his prior supervisory position also implicates DR 9-101 (b) of the Code of Professional Responsibility (22 NYCRR 1200.45 [b]), providing that a lawyer not represent a client in connection with a matter in which he participated personally and substantially as a public employee.[2]
There is a dearth of authority on what is meant by the phrase, “participated personally and substantially.” In discerning this phrase it is instructive to bear in mind the overriding concern and mandate of Canon 9 of the Code of Professional Responsibility, which DR 9-101 (b) is part and parcel of, that a lawyer should avoid even the appearance of impropriety. Indeed it is well established that an attorney is required to avoid not only the fact, but also the appearance of impropriety (Poli v Gara, 117 AD2d 786 [2d Dept 1986]).
*835 In this regard the case of Flushing Sav. Bank v Ahearn (96 AD2d 826 [2d Dept 1983]) involving a breach of DR 9-101 (b) is instructive. The case involved a foreclosure action by plaintiff bank upon property owned by defendant, whose sole shareholder owned and operated an adult home on the property being foreclosed. The attorney at issue represented residents of the adult home, who had been made defendants in the action. The attorney had formerly been an assistant district attorney and had supervised an extensive investigation and prosecution involving loan-sharking. In the course of the investigation certain officers of plaintiff bank and its records were subpoenaed. A possible defense to the foreclosure action was that the mortgage loan was made as the result of a bribe paid to a bank officer rendering the mortgage illegal and unenforceable. The attorney denied having acquired this information from his prior employment, but acknowledged evidence possessed by the District Attorney would support this defense.
The court inferred no actual wrongdoing on the attorney’s part, however it found that the appearance of impropriety was unavoidable. The court opined, “[c]ounsel cannot be expected to construct walls within his own mind, sealing off information he acquired from one client — or, in this case while in public service — from information acquired in the course of subsequent employment.” (Id. at 828.) The outward indication was that counsel was using information acquired during the course of his prior employment to which the other parties had no access. The court held, as the foreclosure action was substantially related to the investigation he had supervised while in public service, it inevitably created the appearance of impropriety that he improperly utilized confidential information acquired in public office, even if, in fact, he did not do so and affirmed his disqualification.
Matter of Gordon (18 Misc 3d 1103[A], 2007 NY Slip Op 52395[U] [Sur Ct, Nassau County 2007]), advanced by the firm of Seth Rubenstein, EC. at oral argument of these motions, is readily distinguishable from the matter before this court. In that case the court determined that there was no violation of DR 9-101 (b) based on a review of its own records that the former court attorney, now appearing as counsel for one of the parties, had no contact with the probate proceeding at issue while employed at the court. The court held that as it had not been assigned to him when he was a court attorney it would be virtually impossible for him to have been familiar with it. This is in *836 stark contrast to the situation before this court where Mr. Beitner, as indicated earlier, in furtherance of his role as chief court attorney and head of the law department, would necessarily become familiar with proceedings in reviewing them for assignment to the subordinate court attorneys, as well as reviewing their resulting work product.
Accordingly, the court determines Mr. Beitner is also disqualified pursuant to Canon 9 of the Code of Professional Responsibility. As found with respect to the appearance of impropriety under Canon 2 of the Code of Judicial Conduct, there is no need to question him separately when he appears as private counsel on any estate referred to the law department while he acted as chief court attorney. The necessary familiarity with the estates which he gained through his prior supervisory position with the court alone creates an appearance of impropriety in violation of Canon 9 of the Code of Professional Responsibility which cannot be overlooked or countenanced.
Finally, it bears noting that Mr. Beitner’s prior necessary familiarity with estates referred to the law department is not the sole concern implicating the appearance of impropriety. Also of concern is the fact that as this court’s chief court attorney through December 2007, he was charged with developing the law department’s policies and procedures, as well as analyzing and preparing written interpretation of statutes and rules for guidance of judicial and nonjudicial personnel (see Unified Court System — Title Standards — Chief Court Attorney). This knowledge and information stemming from his having been a key supervisor provides him with an undue advantage in subsequent litigation concerning estates referred to the law department during his tenure. This creates not only the appearance of impropriety under Canon 9 of the Code of Professional Responsibility (see Twin Labs., Inc. v Weider Health & Fitness, 1989 WL 49368, 1989 US Dist LEXIS 4693 [SD NY 1989]), but also clearly gives rise to an appearance of impropriety under the afore discussed Canon 2 of the Code of Judicial Conduct. The court notes, however, that with the passage of time this particular concern will abate as statutes, rules, methods, procedures, workings and personnel of the court change over time.
As to Mr. Beitner’s partners/associates appearing on a proceeding involving an estate referred to the law department while he acted as chief court attorney, whether an appearance of impropriety arises under Canon 2 of the Code of Judicial *837 Conduct or Canon 9 of the Code of Professional Responsibility involves a determination of the extent to which Mr. Beitner has been insulated and effectively screened from the handling of the proceeding.
In Cardinale v Golinello (43 NY2d 288 [1977]), the Court of Appeals held that if one attorney in a firm is disqualified then all attorneys in the firm are disqualified. This was based on the irrebuttable presumption of shared confidences among attorneys employed at the firm, and due to their ethical obligation to avoid the appearance of impropriety. This rule was later modified to provide that imputed disqualification was not an irrebuttable presumption as it indiscriminately disqualified all members of a law firm (Solow v Grace & Co., 83 NY2d 303 [1994]). However, to avoid disqualification of the whole firm it must be shown that a “Chinese Wall” was erected around the disqualified attorney (Kassis v Teacher’s Ins. & Annuity Assn., 93 NY2d 611 [1999]). Factors to be considered as to whether the presumption of shared confidences and disqualification has been rebutted include: the size of the law firm, the formality or informality of discussion among the attorneys on matters handled by the firm, whether the attorney’s offices were physically isolated, and whether all firm files are open and available to all attorneys of the firm (id.).
On September 4, 2008 this court, as recommended by the Committee in Opinion 08-91, made inquiry of Seth Rubenstein, Esq., who appeared on behalf of the firm Seth Rubenstein, EC. He related that there are three attorneys at the firm; Seth Rubenstein, Nora Anderson, and Leo Beitner. Mr. Beitner commenced working at the firm at the end of January 2008. He indicated that cases are discussed amongst them from time to time. Mr. Rubenstein’s office is separated from Mr. Beitner’s office by a wall and a door, and Mr. Beitner’s office is separated from Ms. Anderson’s office by a wall and a door. Mr. Rubenstein conceded that Mr. Beitner had contact with every case while he worked in the court. However, they attempt to avoid having him work on any case in which he had any significant role while he was in the court’s law department. This is done by asking and relying on Mr. Beitner’s recollection concerning the case. Mr. Rubenstein and Mr. Beitner then decide whether Mr. Beitner had “significant contact” with a case requiring his disqualifica *838 tian from it.[3] He does not consider Mr. Beitner assigning a case to a subordinate court attorney to be a basis for disqualification. In response to the court’s query as to how in a three-member firm is it possible to shield Mr. Beitner from any involvement in a case he may have been involved with in his capacity as chief court attorney, Mr. Rubenstein responded,
“Are you talking about this Chinese Wall business? We can’t. The files are open. If he wants to look at a file, all he has to do is go to the card index and get the file number . . . [W]e don’t have the physical facility for separating him from the file.”
Based on the information elicited at the inquest, the court finds that on any estate which Mr. Beitner would be disqualified from appearing, as there is no procedure at the firm wherein Mr. Beitner is effectively isolated from the handling of these matters by his partners/associates, to avoid the appearance of impropriety the disqualification extends to the partners/ associates also.
As the present proceeding involves an estate referred to the law department on or about May 30, 2007 while Mr. Beitner was the chief court attorney, he as well as the other members of the firm of Seth Rubenstein, EC. are disqualified from appearing on this proceeding for the reasons set forth herein.
As both petitioner’s and respondent’s counsel have been disqualified, the proceeding is stayed for 45 days to allow the parties to retain substitute counsel.

. A necessary review of the papers would be required to determine both the complexity and the number of legal issues involved, if for no other reason than to ensure an even distribution of work to subordinate court attorneys.

. Although the appearance of impropriety created in contravention of the Code of Judicial Conduct (22 NYCRR 100.2), and the prohibition contained in DR 9-101 (b) of the Code of Professional Responsibility (22 NYCRR 1200.45 [b]) can arise from the same set of facts they are not inextricably intertwined. An appearance of impropriety can still arise under the Code of Judicial Conduct, notwithstanding the attorney not having participated personally and substantially with the matter before the court while a public employee.

. In this as well as in a later inquiry made in another proceeding no affirmation was submitted by Mr. Beitner regarding his lack of contact with the estate.